THE GEORGIA RAILROAD & BANKING CO. *vs.* USRY *et ux.*

1. Whether by the use of ordinary care a pregnant woman could avoid the consequences to herself of the negligence of a railway company, in not providing a safe and suitable landing place to alight from the cars, the conductor having designated the place as suitable and assisted her to alight, is a question for the jury. The matter being doubtful, and the doubt not being soluble by the record to the satisfaction of this court, the judgment of the superior court denying the company a new trial, will not be reversed.

2. The like rule holds touching the question whether, after receiving the injury, the woman could, consistently with ordinary prudence, undertake a short journey to reach her home, rather than remain at the station and take immediate precautions to obviate the threatened consequences.

3. Although in strict practice a rule *nisi* for a new trial seems requisite, yet it need not be separate from the motion, nor be signed by the judge, if the judge on hearing the motion can and will recognize as the rule that which has been signed by counsel. More especially is this so where opposing counsel has also recognized it in his acknowledgment of service. If such irregular rule has not been entered on the minutes, it may by order of the judge be entered *nunc pro tunc.*

November 28, 1888.

Railroads. Negligence. New trial. Practice in superior court. Before Judge RONEY. McDuffie superior court. September term, 1887.

Francis M. Usry and his wife, Mary E., sued the railroad company for damages for personal injuries alleged to have been sustained by the latter by the negligence of the company. On the trial, Mrs. Usry testified as follows: Received the injuries while leaving a car of defendant at Dearing, one of its stations, where its trains

regularly stopped, on August 24, 1885. Was returning from Thomson to Dearing as a passenger, on the regular day passenger-train. The train stopped as usual and at the usual place, and there I left it. Sometimes it was run lower down before stopping. The conductor assisted me to get off. There was such a distance from the car-step to the ground, that I had to jump; could not step that distance; do not know how great the distance was. Was injured in leaving the car by the jump. Was carried home in a buggy. Was in a great deal of pain before leaving Dearing, and the pain increased after arrival at home; suffered much that night. After jumping from car, was taken with great pain in lower portion of bowels, which continued until next morning. Was in bed four weeks. Health has never been so good since as it was before. Had been pregnant about two months before leaving car. Had miscarriage next morning at home. There were two tracks. Conductor put me off between them where there was a sink in the ground, into which conductor assisted me to jump. He gave me his hand, and I jumped off. He assisted me as conductors usually do, but the assistance was slight. The sink between the tracks has since been fixed and filled with sand. Have seen a few other passengers leave the train at the same place and on the same side. Have seen others get off lower down the track. Had three children and a colored nurse with me. Conductor helped children off first. I had every proper attention from him. Made no objection to alighting from the car at that place. Got off on the side where conductor was standing to assist. Did not ask him to run train further. Train took water at Dearing; stopped there several minutes. I was familiar with the locality; think I had alighted at about the same place before.

R. C. Johnson, father of Mrs. Usry, testified as follows: Put her and children on the train at Thomson. Heard no complaint at that time or during their visit of two or three days preceding at his house. She appeared to be lively and well. Visited her at Dearing during her illness. The witness then proceeded to relate in detail the circumstances of her condition, as indicating abortion, rendering her critically ill for four weeks and leaving her in a condition from which she is not permanently recovered and is likely to continue to suffer. Do not remember what was the distance passengers had to step to leave trains at the place of the injury before the landing place was fixed. Always got out on the right hand side of the track. After the injury, first saw Mrs. Usry on the second day after she left Thomson. The Usrys lived from a half to three-quarters of a mile from Dearing. The road is a good one; it is level; there is a slight decline to a branch, and a tolerably decent road to the house. Do not know how high was the buggy in which she went home. Do not think the ordinary country buggies are two or two and a half feet high from the ground. When a female is pregnant and has pains indicating that she is threatened with miscarriage, absolute rest is the proper treatment. They should remain on their backs and keep perfectly quiet.

E. S. Harrison, for plaintiffs: For a pregnant woman to make a jump of two and a half feet from a car-step to reach the ground, would be attended with danger of producing abortion. Should not think a landing place from car-steps which was formed by a sink between two tracks, and which made the distance two and a half feet, a prudent one for a child-bearing woman, though she might have stepped off very well in a different state. If the landing place were like the one at Thom-

son, where the sand is brought almost to a level with the rails, it would not be dangerous for a woman two months advanced in pregnancy. If the distance was the same, the effect would be the same, whether she stepped from a car-step, a door-step or a buggy-step. A female in that condition must be careful how she steps, under all circumstances. It is a common thing, in the ordinary daily habits of females, for miscarriages to be brought on by false steps or by stepping off ordinary steps, by slight causes; and miscarriage is most likely to occur between the second and third month of pregnancy. If a female aware that she is pregnant meets with an accident under circumstances likely to lead to an abortion, feels these symptoms and knows what they indicate, it is not prudent for her to travel three-quarters of a mile over a country road in a buggy. Whether aware or not, I do not know but that the drive would tend to aggravate the trouble. If a woman, in getting off cars, felt pains in the lower portion of her bowels, and her husband was there to put her in the buggy carefully, he knowing the circumstances, I do not think it necessarily imprudent for him to drive her home with care in a buggy over a good road. It may be several days after the cause of the abortion occurs before it is produced. Pains in the lower portion of the bowels and in the back would be some symptoms. The only prudent course would have been to remain perfectly quiet as soon as these pains were felt. If they knew an abortion was about to take place, it would have been prudent to have carried her to a place where she could have reclined.

Dr. Quillain : For a woman pregnant for two months, I would consider dangerous a landing place where she was obliged to jump from two to two and a half feet.

Benjamin Adams : Before this place at Dearing was

filled up, the ties came the width of the ties above the ground. You had to get down in between the ties, which made it six inches shorter. You could step from the lower step of the car to the end of the tie. I have stepped off so, and between the ties. Before it was filled up, the ties of each line of track were exposed, as I have said, on the left-hand side. The ground between these two lines of track was filled up. In going up and down off and on the cars, it was too high for a man of my age and infirm as I am. Could not say what was the distance from the step to the ground; say between two and two and a half feet, before it was worked upon. Do not think it was quite as high on the south side as on the other, but there was not much difference. There was no platform there, but there used to be. The ground began to slope where you got off. Passengers usually got off on the left-hand side going towards Augusta. The tank stands this side of the public crossing, and the passenger-cars would be further up the road. This landing place was fixed directly after Mrs. Usry was injured; it was filled with earth about up to the level of the ties. The difference between the distance I had to step then and now is between four and six inches. Never knew any one to be hurt there before. Do not know the average height of the buggies used in the country; some are fifteen to eighteen inches; some higher; some have two steps; some one, which makes them higher.

Francis M. Usry : Carried wife home in a one-horse buggy from the station after she was injured, with three children and a little nurse. Drove carefully. There were no dangerous places in the road. I generally work it, and as a general thing it is a very good road. Do not remember whether I helped wife in buggy at Dearing or not, but in taking her out I took

her under the arms and lifted her out, and was very particular. She told me on the road home what condition she was in. I fully appreciated the danger. She walked into the house by herself after I took her from the buggy. She was in pain all night. She got off the train where passengers usually alighted. Passengers from the ladies' car got off right over the sink between the tracks. Now passengers get off opposite the tank and below the sink. In my opinion, from the bottom step to the ground was two and a half to three feet. It was as much as I could do to get on there. I had to pull like old Dick to get up, and had to slide off. There was nothing but the crossties to catch a descent. The filling was done between the tracks pretty quickly after I complained to the company. Passengers get off where the filling has been done. At the time of the injury, they generally got off between the tracks. The conductor stood sometimes on one side and sometimes on the other. The train had been gone about ten minutes when I drove up to the station. My wife told me she felt these pains; that is why I was so particular with her. Never measured the distance from the car-step to the ground; just judge it; cannot swear positively as to the distance.

The defendant introduced no evidence. The jury found for the plaintiffs $1,000. The defendant made the following motion for a new trial:

"Francis M. Usry and Mary Usry vs. The Georgia Railroad and Banking Company. The jury in the above stated case having rendered a verdict against the defendant in the sum of one thousand dollars, now at the same term of the court at which said verdict was rendered, it is, on motion of defendant's counsel, ordered that plaintiffs show cause, if any they have, why said verdict should not be set aside and a new trial ordered on the following grounds, to wit:"

The grounds were that the verdict was contrary to

law and evidence. This is signed by defendant's attorneys. Then follows:

"Due and legal service of the above rule acknowledged; copy of rule and further service waived. Thomas E. Watson, attorney for Usry *et al.* September 22, 1887."

"Approved and ordered filed, September 22, 1887. H. C. Roney, J. S. C. A. C."    \

Upon a separate piece of paper the fo..owing order was taken:

"Francis M. Usry and wife *vs.* The Georgia Railroad and Banking Company. Defendant in the above stated case having made a motion for new trial, it is ordered, 1st, that the defendant have thirty days from the final adjournment of this term of the court to file a brief of evidence; 2d, that the motion for new trial may be heard in vacation at any time after the filing of the brief of evidence, upon ten days' notice by either party, with leave to except as in term time; 3d, that defendant have leave to amend the motion for new trial at any time before the hearing of the same. H. C. Roney, J. S. C. A. C."

Upon the back of this paper appeared this memorandum: "Entered Sept. 22, 1887," as stated in the cross-bill of exceptions, or "Entered on the minutes, Sept. 22, 1887, R. H. Pearce, clk. S. C.," as stated in the record.

On January 12, 1888, in pursuance of this order, the defendant amended the motion by adding the ground that the verdict was contrary to the charge of the court. This ground was approved January 12, 1888. The motion came on for argument January 20, 1888, when counsel for the plaintiffs moved to dismiss it on the ground that there was no rule *nisi* granted by the judge and no waiver of the same, and no appearance and pleading in lieu thereof. This motion was overruled; as also was the motion for new trial. Whereupon both sides filed bills of exceptions, the defendant alleging error for not granting the new trial on the first ground of the amended motion; and plaintiffs, in their cross-

bill, alleging that the court erred in not dismissing the motion for new trial.

J. B. CUMMING, J. C. C. BLACK, BRYAN CUMMING and W. D. TUTT, for the company.

THOS.-E. WATSON, *contra.*

BLECKLEY, Chief Justice.

1, 2. Mrs. Usry, in alighting from a regular passenger-train at a regular station, being slightly advanced in pregnancy, was injured so that miscarriage ensued, and serious illness followed. She obtained a verdict against the company for $1,000, and the superior court refused a new trial. The sole ground of the motion insisted on in the bill of exceptions, and argued here, is that the verdict was contrary to the charge of the court touching the duty to observe and the effect of omitting ordinary care, on the part of Mrs. Usry herself, at and immediately after the injury. What we have to rule on the subject is stated briefly, but accurately, in the first and second head-notes of this opinion. Such knowledge as we possess in respect to risks which prudent women may or may not take in the early stages of prospective maternity, does not enable us to detect, in the light of the record before us, the mistake of the jury, if they committed any, in deciding the questions of fact with which they had to deal. The conformity of their verdict to law and to the charge of the court depends upon whether they had a correct standard of the prudent pregnant woman in their minds, and whether they correctly compared therewith the conduct of Mrs. Usry. We can only hope the jury went right in both these respects, for the plain truth is we do not know whether they did or not. They have the support of

our learned brother who presided at the trial, and who approved their verdict by refusing a new trial. We are not free from painful doubt and uncertainty, but this very fact admonishes us to beware of invading the province of the jury. We have not failed to scrutinize the facts and study the case closely, but with the result stated. The evidence is fully set out in the official report.

3. On the cross-bill of exceptions, which complains of the refusal of the court to dismiss the motion for a new trial for lack of a formal rule *nisi*, we entertain no doubt. See third head-note. According to *McIntire vs. Tyson*, 56 *Ga.* 468, the rule *nisi* may be waived indirectly, as well as directly, and it may even be granted at a term of the court subsequent to that at which the motion is made. Here there was an informal but substantial rule, and counsel acknowedged service upon it, and the judge recognized it, as a rule.

Judgment affirmed.